Good morning, Your Honors. My name is Elizabeth Fisher and I'm appearing on behalf of Appellant Scott Shimoda. I think there are two major issues that I'd like to discuss, but first I'd like to get rid of the, just briefly comment on the, what could be termed the appendi issue. This was raised because Appellant was indicted in September 2000 for 500 grams or more of cocaine. When he entered his plea agreement in February of 2001, he pled to cocaine or some other drug. And that's what his plea agreement conformed with the general jury instructions at that time, pre-apprendi, that he didn't have to plead to a particular amount or a particular kind of drug. I realize that the argument that I persist in making is kind of foreclosed by precedent, but I do believe that the defendant's mens rea as to the type of drug that he possessed, in this case he thought it was marijuana, but it turned out to be cocaine, should have some bearing on his sentence. I'd like to move on, in case the court doesn't have any other questions on this issue, to the increase in his criminal history for a deferred acceptance of no contest plea in Hawaii. Well, it occurs to me that if you do not have an appendi issue upon which you prevail, then how do you avoid the waiver of appeal? Because you assert that he was not sentenced within the statutes of conviction. I believe that this should be analyzed like the Bailey cases are analyzed. Pre-Bailey, the firearm convictions were, pre-Bailey cases, they did appeal the convictions because they hadn't really entered their guilty pleas to what was actually an offense. And I believe that this case should be analyzed in the same way, that if he entered his plea to 500 grams or more of a detectable drug, that he really shouldn't be sentenced for, he shouldn't really be considered to have been convicted of what could be a higher level for cocaine. But the indictment alleges, the count to which he pled, alleges 500 grams or more. And he stipulated to precise amounts that are consistent with the allegations in the indictment. And then he agrees to waive his right to appeal if he is sentenced within the statutes of conviction. Now, I'm having a struggle right off the bat as to trying to identify how your contention shapes up that he was not sentenced according to, as you, as the agreement says, the statutes of conviction. Which statute did the court exceed in sentencing him? Well, we have made the argument that the amount of the type of drug puts him in a particular guideline and that the guideline is also a statute which sets a maximum within an 841b1 category within which he should not be sentenced above the guideline. Well then how, well go ahead, how would a person plead guilty to any indictment such as this one? Is there a way that the person can plead guilty to such an indictment? The indictment was very clear, your honor. It charged the drug amount. But what I'm saying is the plea agreement said cocaine or another illegal drug. So that's what he pled guilty to. He wasn't as specific as the indictment in pleading guilty to, it's like, it would be like in a trial where the cocaine was charged, for instance, but the jury was instructed that it was a detectable amount of a certain drug and you couldn't really be sure then whether, you know, what the jury actually meant. It's kind of a technical argument, I agree, but... If we look at the judgment of conviction, it recites the statutes of conviction, none of which are guidelines. So what he's actually on paper convicted of is certain statutory prohibitions and they don't involve the guidelines, so if you look at what actually came down on him, it has nothing to do with guidelines. I understand, Judge Nelson. It is our contention that it is not only the statute of conviction, the 841A, 841B, that should count in these cases, but under the United States RLC, which no court has applied in the Apprendi context yet, that we believe the guidelines as a statute are also a statute that sets maxima. All right. I'd like to move on to what I believe is the core issue in this case, which is the effect of his diversionary disposition on his criminal history. This Court's cases have held pretty... I did provide the Court with the statute, the Hawaii Revised Statute. It's 831-3.2 regarding expungements. This Court has looked to what effect the DAG or the DANC in this case, which is a deferred acceptance of nola contendere plea, has on the defendant's future possible state mishaps, convictions. If it has any effect, if it can be used to any effect in Hawaii, then it should, even though it could be expunged, it can be used as part of his criminal history. I have looked through the case law in Hawaii, and it doesn't appear to me that even if... it doesn't appear to me that these pleas can be used against the defendant in a subsequent state proceeding, therefore they shouldn't be able to... he shouldn't be able to use it as part of his criminal history. The cases which address these sorts of pleas often involve the state arguing very strenuously that the plea shouldn't be allowed to be entered, and there don't appear to be any cases at all involving someone who's had a prior DAG or a DANC, and having it expunged, ever committing another state crime, and having it dredged up and used against him. If that is the standard, as I didn't really destroy the conviction here, there's something on the criminal record, as opposing counsel notes, but it's not something that is either a conviction or an arrest. And if I might reserve my 15 seconds for... All right. We'll hear from the defendant. May it please the Court, my name is Michael Kawahara, Assistant to the United States Attorney representing Plaintiff O'Pelley in this case. We submit that the dispositive issue for the Court is whether the defendant waived his appellate rights, and therefore his ability to appear before this Court and present the substantive appellate issues. The exception that the defendant wishes to rely upon is that talking in terms of if there is a sentence in excess of the statutory maximum, and we would submit that under the relevant statute here, which is 21 U.S.C. 841B1B, the maximum statutory sentence is 40 years. The defendant's sentence, of course, was well below that, and therefore within the statutory and there is no issue, really, that somehow the defendant's entry of a plea or that otherwise this appellate waiver was otherwise invalid, therefore it should be enforced by this Court. With respect to the defendant's argument based upon Apprendi and the RLC case, we submit that we have cited in our briefs two very recent Supreme Court and Ninth Circuit cases, the Cotton case and the Menorah case, which are both post-Apprendi cases, and we submit that they are particularly binding in this particular case. Specifically Menorah, I think, is rather important. In Menorah, you have a case where the defendant there was accused in the indictment of possession with intent to distribute 1,000 kilograms of marijuana. That, of course, triggered the mandatory 10-to-life sentence under Title 21. That is exactly what happened here in this case. The indictment charged Mr. Shimoda with possession with conspiracy to possess with intent to distribute 500 grams or more of cocaine. That invoked under the statute the mandatory 5- to 40-year sentence under 841B1B. In the Menorah case, the defendant pled guilty with a Britain plea agreement to the charge, the mandatory 10-to-life charge. And as part of the stipulated facts in the case, that he knew that both parcels contained cocaine or some other illegal drug. In this case, the same thing happened. A plea agreement was entered between Mr. Shimoda and the United States, wherein he pled guilty to the conspiracy charge involving 500 grams or more of cocaine. And in addition, the defendant agreed as part of the stipulated facts in the case that he knew that both parcels contained cocaine or some other illegal drug. He further stated during his plea inquiry before the district judge that he was for receiving these two parcels on behalf of Alexander. Alexander was going to reimburse him by giving him or was going to compensate him by giving him $1,000 or a gram of cocaine. So there was plentiful evidence concerning that. And in addition, just like in the Menorah case, in the plea agreement Mr. Shimoda signed, there was an indication of that there were four kilograms of cocaine contained within parcels one and two, and that all of this amount would be taken into account in determining his base offense level, which was 30. So I dispute what defendant or appellant has said when she says that he was just pleading guilty because he thought it was just marijuana or some other illegal drug. The plea agreement set forth all of the details and what defendant knew as of the time he entered his plea. That there should be no question at this point in time as to what defendant was entering into and what the sentence ultimately would end up being. I lastly would talk, Your Honor, about the effect of the expunged arrest. It is not under Hawaii law. The first point I would make is under Hawaii law you cannot expunge a conviction. The only procedure here authorized is expunging and arrest. And that is important here because there is no question in this case, and the appellant has not really argued seriously, that this Dank plea for the harassment charge that he entered back in 1997 was a diversionary disposition. And it's clear under federal law, and it's federal law that counts, that this was a diversionary disposition for which one criminal history point must be assessed. The only question presented on this appeal is whether this expunged arrest procedure somehow should change this diversionary disposition into no assessment of a criminal history point. The first point we make, of course, as I said earlier, this was only the arrest was expunged, not the conviction. The second point I would make is that what happens under Hawaii law if your arrest is expunged, by statute only your records of arrest are made confidential. The record of conviction is not. And therefore, that record of conviction was available in the First Circuit Court here for the pre-sentence investigation and the like to have access to that, to determine the diversionary disposition. And the last point of most importance is the statute itself specifically provides, and the court would look at the expungement statute provided by the appellant. It specifically says, records filed under subsection C shall not be divulged except upon inquiry by subsection 1, a court of law or an agency thereof which is preparing a pre-sentence investigation for the court. So contrary to what appellant counsel said, if there is a subsequent criminal disposition after this arrest has been expunged, that arrest even may still be considered because that is an express exception under the expungement statute in Hawaii law. But the point that I would make, Your Honor, is that there should be no effect under Hawaii law for this expunged arrest procedure. It was part and parcel of the dam procedure to give a person a fresh start in the event or after they had fulfilled the probationary period under the dam. But just like the guidelines said, when a person commits a further crime, why should that person receive the benefit of that rehabilitation which he has spurned by committing that additional crime? That, his prior criminal history in full, should be considered by the court in opposing an appropriate sentence. Now, defendant has not made any comment with respect to the last point raised, and that is that trial defense counsel should have made a motion for departure downward for over-represented criminal history. I will address that real quickly, if I may. The first point I would make is you have a defendant who basically assaulted and harassed his own girlfriend two separate occasions. That gave rise to the two criminal history points which were assessed against him. In addition, we see rising criminality in that he committed the incident federal crime, which is more serious. So therefore, we would suggest that this shows rising criminality and therefore cannot be disregarded. It should not by itself give ground. So therefore, there was no breach of any duty by trial defense counsel in not raising it to begin with. But there is a second prong of ineffective assistance of counsel, and that is the question of prejudice. And we would point out that in this particular case, Mr. Shimoda did cooperate with the United States. A departure motion was made on his behalf. Now, that departure motion allowed district court in its discretion to sentence defendant to less than the statutory minimum, five years. A motion based upon over-represented criminal history would not have been able to go below the statutory five to begin with. And so I would suggest to the court that it was a strategy matter for perhaps for trial defense counsel to say devote his efforts to trying to get a sentence imposed using the prosecution's motion for departure downward as the basis in an effort to get as good a lenient sentence as he could. And he was very successful in that. So therefore, there was no ineffective assistance of counsel. Thank you. All right. Thank you. We have some time left. Would you put a minute on the clock? Just briefly, Your Honor. Policy counsel states that federal law counts when you're talking about whether a state proceeding, disposition of any kind, should be used to calculate criminal history. But that is really not what happens in this Court's cases. I think it was in Hidalgo, for instance, his priors were robberies. And one was expunged and couldn't be counted as criminal history. In Hayden, the court goes into great detail about saying that it is the effect in the state system of the state's laws regarding convictions, arrests, and expungements which should count in dealing with criminal history. With regard to an additional downward departure motion regarding his criminal history, it being overrepresented if he had had the two points assessed, counsel asserts that his substantial assistance departure kind of trumps any departure motion that defense counsel could have made. However, in setting the appropriate guideline range for this particular person, it assists the court in determining how far down below the statutory maximum that the court should depart depending on the individual defendant. Thank you. The case just argued to be submitted. Judge Reimer, are you hearing us all right? Yes. All right. Thank you. We'll move then to the next case of U.S. v. Uliboff. A. James M. Uliboff, U.S. v. Uliboff, U.S. v. Uliboff, U.S. v. Uliboff, U.S. v. Uliboff, U.L.B.  A. James M.
judges: Leavy, Rymer, Tg Nelson